IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| OCCU-HEALTH, INC. | § | PLAINTIFF |
| | § | |
| v. | § | Civil No. 1:06CV159-HSO-JMR |
| | § | |
| MISSISSIPPI SPACE SERVICES, | § | |
| a Joint Venture of The Shaw Group | § | |
| and Computer Sciences Corporation, | § | |
| THE SHAW GROUP, and COMPUTER | § | |
| SCIENCES CORPORATION | § | DEFENDANTS |

## ORDER AND REASONS DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

BEFORE THE COURT are the Motion for Partial Summary Judgment [92-1] filed by Plaintiff Occu-Health, Inc. ["Plaintiff" or "OHI"], in the above-captioned cause on February 1, 2008, and the Motion for Summary Judgment to Dismiss Plaintiff's Tortious Breach of Contract and Bad Faith Claims [95-1] filed by Defendants Computer Sciences Corporation, Mississippi Space Services ["MSS"], and The Shaw Group [collectively, "Defendants"], on February 1, 2008. Although styled as a Motion for Summary Judgment, Defendants' Motion is effectively one for Partial Summary Judgment, since it does not seek an adjudication of all claims. Plaintiff has filed a Memorandum in Opposition to Defendants' Motion [100-1], and Defendants have filed a Rebuttal [104-1]. Defendants have filed a Memorandum in Opposition to Plaintiff's Motion [99-1], and Plaintiff has filed a Rebuttal [101-1]. After consideration of the submissions and the relevant legal authorities and for the

reasons discussed below, the Court finds that both Plaintiff's and Defendants'

Motions should be denied.

I. <u>FACTS AND PROCEDURAL HISTORY</u>

In 1998, OHI and MSS, in a joint effort, were the successful bidders for the

Facilities Operation Services ["FOS"] Contract at Stennis Space Center in Hancock

County, Mississippi.  The parties then entered into a subcontract agreement

[hereinafter the "Subcontract"] to perform the medical facilities and wellness

services portion of the FOS.  *See* Compl., at ¶ 13.  The following termination

provision was incorporated into the Subcontract:

> **52.249-6  Termination (Cost-Reimbursement).**
> As prescribed in 49.503(a)(1), insert the following clause:
> TERMINATION (COST-REIMBURSEMENT) (SEP 1996)
> (a)  The Government may terminate performance of work under
> this contract in whole or, from time to time, in part, if–
> (1) The Contracting Officer determines that a termination is in the
> Government's interest; or
> (2)  The Contractor defaults in performing this contract and fails
> to cure the default within 10 days (unless extended by the
> Contracting Officer) after receiving a notice specifying the default.
> "Default" includes failure to make progress in the work so as to
> endanger performance.
> (b)  The Contracting Officer shall terminate by delivering to the
> Contractor a Notice of Termination specifying whether termination
> is for default of the Contractor or for convenience of the
> Government, the extent of termination, and the effective date. If,
> after termination for default, it is determined that the Contractor
> was not in default or that the Contractor's failure to perform or to
> make progress in performance is due to causes beyond the control
> and without the fault or negligence of the Contractor as set forth
> in the Excusable Delays clause, the rights and obligations of the
> parties will be the same as if the termination was for
> the convenience of the Government.

48 C.F.R. § 52.249-6(a)-(b), attached as Ex. "4" to Pl.'s Mot.

-2-

The Subcontract required OHI to staff the Stennis medical clinic with "a sufficient number of competent and qualified personnel to accomplish the services." *See* Subcontract, Annex 1.0, at Item no. 1.1.10.1, attached as Ex. "A" to Compl. The Subcontract also required OHI to provide "physician services" during the clinic's operating hours. *See* Subcontract, Annex 8.0, at § 8.2.1, attached as Ex. "A" to Compl. It is undisputed that on February 3, 2006, no physicians were present at the medical clinic. Defendants considered OHI to be in default of the Subcontract. Plaintiff disputes that it was in default. *See* Compl., at ¶¶ 16-17. On February 6, 2006, the next business day, MSS notified OHI that it was terminating the Subcontract for default, effective the next day, February 7, 2006. *See* Compl., at ¶ 16. Plaintiff alleges that by February 6, 2006, it had cured any alleged default, but MSS refused to suspend or cancel the termination. *See id.* at ¶ 17.

Plaintiff initiated this suit on March 2, 2006 [1-1], then filed an Amended Complaint on March 30, 2006 [2-1] [hereinafter, "Complaint"], asserting claims for breach of contract, tortious breach of contract, and bad faith. *See* Compl., at ¶¶ 21-27. Plaintiff now moves this Court to grant partial summary judgment as to Defendants' liability on the breach of contract claim, asking for a trial to proceed only on damages. Defendants oppose Plaintiff's Motion, arguing that there remain questions of material fact and that Plaintiff is not entitled to judgment as a matter of law on the breach of contract claim. Defendants move for a partial summary judgment as well, seeking dismissal of Plaintiff's tortious breach of contract and bad

faith claims.[1]  Plaintiff responds that Defendants are not entitled to judgment as a

matter of law on these claims.

## II. DISCUSSION

### A.      Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) states that the judgment sought shall

be rendered forthwith if the pleadings, depositions, answers to interrogatories,

admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that a moving party is entitled to judgment as a

matter of law.  *See* FED. R. CIV. P. 56.  The purpose of summary judgment is to

isolate and dispose of factually unsupported claims or defenses.  *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th

Cir. 1988).

The mere existence of a disputed factual issue does not foreclose summary

judgment.  The dispute must be genuine, and the facts must be material.  *See Booth*

*v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 541, 543 (S.D. Miss. 1999).  With regard to

"materiality," only those disputes or facts that might affect the outcome of the

lawsuit under the governing substantive law will preclude summary judgment.  *See*

*id.* at 543 (*citing Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir.

1987)).  Where "the summary judgment evidence establishes that one of the

---

[1]  Because Defendants only request summary judgment on Plaintiff's tortious breach of
contract and bad faith claims, and not on the breach of contract claim, the Court will treat
Defendants' Motion as one seeking partial summary judgment on that one count of the Complaint.

essential elements of the plaintiff's cause of action does not exist as a matter of law,

. . . . all other contested issues of fact are rendered immaterial." *Id.* (*quoting*

*Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

   To rebut a properly supported motion for summary judgment, a moving party

must present significant probative evidence, since there is no issue for trial unless

there is sufficient evidence favoring the nonmoving party for a jury to return a

verdict for that party. *See Booth*, 75 F. Supp. 2d at 543.   If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The non-movant may not

rely on mere denials of material facts, nor on unsworn allegations in the pleadings

or arguments and assertions in briefs or legal memoranda. *See Booth,* 75 F. Supp.

2d at 543.

B.   Motions for Partial Summary Judgment

   Plaintiff's Motion for Partial Summary Judgment on its breach of contract

claim contends that Defendants wrongfully terminated the Subcontract.  Plaintiff

maintains that it was not in default by operating the medical clinic without any

physicians present on the one day in question, and that even if this constituted a

default, Defendants did not give Plaintiff an opportunity to cure any default

pursuant to a ten (10) day cure provision contained in the Subcontract.  The

provision at issue, cited earlier herein, is essentially an incorporation of 48 C.F.R. §

52.249-6(a) into the Subcontract.  Defendants' Motion for Partial Summary

Judgment on Plaintiff's tortious breach of contract and bad faith claims asserts that

the cure provision did not apply in this case because the failure to provide physicians at the medical clinic was a material breach of the contract.  Even if the cure provision did apply, Defendants maintain that termination of the contract without allowing for a cure period does not rise to the level of bad faith or a tortious breach of contract, nor does it warrant an award of punitive damages.  The central issue in this case is who, if anyone, breached the Subcontract first, and what remedies are available to the non-breaching party.

1.      Plaintiff's Motion

Plaintiff seeks summary judgment on its claim that Defendants breached the Subcontract.  The threshold questions here are whether Plaintiff initially defaulted on the Subcontract by operating the medical clinic at Stennis without a physician present on Friday, February 3, 2006, and if it did, whether Defendants should have permitted Plaintiff ten (10) days to cure the default pursuant to the Subcontract before terminating it.  Defendants contend that they were under no obligation to comply with the ten (10) day cure provision because Plaintiff materially breached the Subcontract when no physicians were present on a single day.  *See* Memo. in Supp. of Defs.' Mot., at pp. 4-5.

"Under the general rule, if a contracting party has committed a material breach of contract the other parties should be excused from the obligation to perform further."  *See Olin Corp. v. Central Industries, Inc.*, 576 F.2d 642, 646 (5th Cir. 1978) (internal citation omitted).  A cure provision does not alter this general rule, unless by its terms it is the exclusive method of termination.  *See id.* at 647.  A

review of the language of the Subcontract makes it clear that the ten (10) day cure

provision was not the exclusive method of termination in this case.  If the contract

is materially breached, the non-breaching party may terminate the contract without

regard to the cure provision.  *See id.* at 648.  "The breach of contract for which

rescission should be decreed must be one, not occasional and immaterial only, but

one going to the very substance of the contract."  *Id.* (*citing Light, Heat & Water Co.

v. City of Jackson*, 19 So. 771 (Miss. 1895)).  Whether a breach of contract is

material is normally a question of fact.  *See Hensley v. E. R. Carpenter Co., Inc.*, 633

F.2d 1106, 1110 (5th Cir. 1980).

The determination of whether the cure period applied is dependent upon

whether Plaintiff materially breached the Subcontract on February 3, 2006, and

whether Plaintiff materially breached the Subcontract is a question of fact.  *See

Hensley*, 633 F.2d at1110.  Because resolution of Plaintiff's breach of contract claim

rests upon disputed questions of fact, partial summary judgment in Plaintiff's favor

is inappropriate.

2.     Defendants' Motion

In their Motion for Partial Summary Judgment, Defendants assert that

summary judgment is appropriate as to Plaintiff's claims for tortious breach of

contract and bad faith, and that punitive damages are not appropriate in this case.

Defendants contend that, even if Plaintiff did not materially breach the Subcontract

and the cure provision applied, failure to allow a cure period did not rise to the level

of bad faith or a tortious breach of the contract, nor does it warrant the imposition

of punitive damages.  *See* Memo. in Supp. of Defs.' Mot., at p. 5.

In support of these particular claims, OHI's Complaint alleges that, in addition to breaching the Subcontract, Defendants terminated it "without justification and any reasonable or legitimate basis in fact or law."  *See* Compl., at ¶ 27.  OHI asserts that Defendants terminated the Subcontract for reasons other than its purported default.  *See* Mem. in Opp'n to Defs.' Mot., at p. 1.  Specifically, OHI contends that Defendants wanted to "boot" it from "Team MSS" in order to gain fees and profits that would have otherwise gone to OHI, and win the next FOS contract awarded at Stennis without having to employ OHI or any other subcontractor.  *See id.*  OHI further alleges that MSS sought to tarnish its reputation when it purportedly sent out cure notices without any legal justification and submitted negative reviews of OHI's performance to other government agencies after it decided to "kick Occuhealth off the team."  *See id.* at pp. 1-2.

In her deposition, Pat McCullough ["McCullough"], the president of OHI, identified four purported grounds supporting Plaintiff's bad faith claim: (1) MSS wrote a letter to Plaintiff three years earlier, in April 2003, indicating that MSS was not going to exercise its option to renew the Subcontract for another year; (2) MSS insourced two industrial hygiene positions; (3) MSS offered to buy out Plaintiff's Subcontract; and (4) MSS filled out an unfavorable past performance questionnaire.  *See* Depo. of Pat McCullough, at pp. 229-30, attached as Ex. "1" to Defs.' Mem. in Supp. of Mot.

"A tortious breach of contract is a breach of contract *coupled with* 'some intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort.'" *Robinson v. Southern Farm Bureau Casualty Co.,* 915 So. 2d 516, 520 (Miss. Ct. App. 2005) (emphasis added) (*quoting Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 66 (Miss. 2004)). Defendants argue that under this heightened standard, summary judgment is appropriate as to this claim. *See* Memo. in Supp. of Defs.' Mot., at pp. 5-6.

Defendants also seek summary judgment on Plaintiff's bad faith claim, more properly described as a claim for the violation of the duty of good faith and fair dealing, which is a covenant inherent in all contracts. *See Ferrara v. Walters,* 919 So. 2d 876, 883 (Miss. 2005) (*citing Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992)). "The duty of good faith and fair dealing applies to the performance and enforcement of a contract." *Id.* (*citing Braidfoot v. William Cary College*, 793 So. 2d 642, 651 (Miss. Ct. App. 2000)). The duty of good faith and fair dealing requires a party "not only to refrain from hindering or preventing the occurrence of conditions of his own duty or the performance of the other party's duty, but also to take some affirmative steps to cooperate in achieving these goals." *Id.* (*quoting* Farnsworth, *Contracts*, § 7.17, 526-27 (1982)).

"Good faith is the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party. The breach of good faith is bad faith characterized by some conduct which violates

standards of decency, fairness or reasonableness." *Cenac*, 609 So. 2d at 1272 (*citing*

Restatement (Second) of Contracts § 205, 100 (1979)).  "Bad faith, in turn, requires

a showing of more than bad judgment or negligence; rather, 'bad faith' implies some

conscious wrongdoing 'because of dishonest purpose or moral obliquity.'" *University*

*of Southern Miss. v. Williams*, 891 So. 2d 160, 170-71 (Miss. 2004) (*quoting Bailey v.*

*Bailey*, 724 So. 2d 335, 338 (Miss. 1998)).  "However, in performing a contract, the

parties are not prevented from 'protecting their respective economic interests' or

from asserting their rights in the event of a default."  *American Bankers' Ins. Co. of*

*Fla. v. Wells*, 819 So. 2d 1196, 1206 (Miss. 2001); *see also Gen. Motors Acceptance*

*Corp. v. Baymon*, 732 So. 2d 262, 269 (Miss. 1999); *Merchants & Planters Bank of*

*Raymond v. Williamson*, 691 So. 2d 398, 405 (Miss. 1997).  The Mississippi

Supreme Court has nevertheless observed that, in the context of a mortgage, "it is

clear that [the duty of good faith and fair dealing] entails a significantly lower

standard of care than that owed in the fiduciary context."  *Merchants & Planters*

*Bank of Raymond v. Williamson*, 691 So. 2d 398, 405 (Miss. 1997).

Defendants have presented evidentiary support for their contention that the

Subcontract was terminated because they believed that Plaintiff had committed a

material breach on the day that no physicians were present at the clinic.  In

opposition, Plaintiff points to four specific acts by Defendants, which are detailed

above, in an attempt to demonstrate that the actions of Defendants were a tortious

breach of contract and not within reasonable business practices.  *See McDaniel v.*

*Citizens Bank*, 937 So. 2d 26, 29 (Miss. Ct. App. 2006).  While it remains to be seen whether or not these asserted grounds, if supported by sufficient evidence, will be enough to submit the case to the jury at trial on Plaintiff's tortious breach of contract and breach of the duty of good faith and fair dealing claims, the Court is of the opinion that at this juncture, there remain questions of fact regarding both claims which render summary judgment inappropriate.

The Court is of the opinion that material questions of fact remain as to Plaintiff's tortious breach of contract claim, including, but not limited to, whether there was an intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort committed by Defendants.  *See Robinson,* 915 So. 2d at 520 (internal citation omitted). The Court is further of the opinion that material questions of fact remain as to Plaintiff's claim of bad faith, including, but not limited to, whether Defendants' actions were reasonable, whether Defendants intentionally acted outside their contractual authority, and whether Defendants took the appropriate affirmative steps to cooperate in achieving the goals of the Subcontract. *See Ferrara v. Walters*, 919 So. 2d 876, 883 (Miss. 2005).  In reaching these conclusions, the Court is guided by the principle that summary judgment should be used cautiously "when resolution of the dispositive issue requires a determination of state of mind." *Croley v. Matson Navigation Co.,* 434 F.2d 73, 77 (5th Cir. 1970).  For the reasons stated herein, partial summary judgment in favor of Defendants is not appropriate.

### III.  CONCLUSION

The Court has considered the arguments and evidence advanced in support of the Motions for Partial Summary Judgment filed by Plaintiff and Defendants.  The Court concludes that material fact questions exist with respect to both Motions. Therefore, both Plaintiff's and Defendants' Motions for Partial Summary Judgment must be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons stated herein, the Motion for Partial Summary Judgment of Plaintiff Occu-Health, Inc. [92-1], should be and is hereby **DENIED.**

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, for the reasons stated herein, the Motion for Partial Summary Judgment of Defendants [95-1], should be and is hereby **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 9th day of May, 2008.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE